UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

In re:                                              Case No:        19-11935 - JGR
RACHEL ELOISE GONSER,
Debtor
                                                    Chapter         7

COLORADO HOUSING AND FINANCE AUTHORITY
and its SUCCESSORS, ASSIGNS, SERVICERS,
TRUSTEES AND INVESTORS,
Creditor
vs.
RACHEL ELOISE GONSER and KEVIN P. KUBIE,
Trustee
Respondents

### <u>Motion For Relief From Stay</u>

Comes now, COLORADO HOUSING AND FINANCE AUTHORITY, hereinafter "Movant", by and through its attorneys, JANEWAY LAW FIRM, P.C., and requests that this Court enter an Order For Relief From Stay pursuant to 11 U.S.C. Section 362(d).  As grounds for this Motion, Movant states:

1.     Debtor filed this Bankruptcy petition on March 18, 2019.

2.     Movant seeks to terminate the automatic stay as to Movant.

3.     Debtor, RACHEL ELOISE GONSER AND NON-BANKRUPTCY CO-DEBTOR RICHARD GLENN MCNEAL, III signed a Note for the benefit of Movant or Movant's predecessors in interest on the Note.  Said Note was in the original amount of $186,558.00. Movant is in possession of or otherwise entitled to enforce said Note.

4.     Movant is a secured creditor by virtue of the Deed of Trust signed by Debtor RACHEL ELOISE GONSER AND NON-BANKRUPTCY CO-DEBTOR RICHARD GLENN MCNEAL, III, recorded in the County where the property is located on December 21, 2017 at reception number 217154042.

5.     All rights and remedies under the Deed of Trust have been assigned to Movant pursuant to that certain Assignment of Deed of Trust.

6.     Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contacts, judgments, mortgages, loan modifications and security agreements in support of right to seek a lift of the automatic stay and foreclosure if necessary.  The copies were provided to counsel by Movant, or obtained from public records.

7.     The property (hereinafter "Property") described in the Deed of Trust and the subject of this Motion appears to be the Debtor's principal residence:

LOT 1, BLOCK 26, J.R MARKS SUBDIVISION OF BLOCKS 16, 25 AND 26, KNOB HILL ADDITION, COUNTY OF EL PASO, STATE OF COLORADO

Purported Common Address: 2333 E WILLAMETTE AVE, COLORADO SPRINGS, CO 80909

8.  The current value of the property is approximately $186,208.00 pursuant to the assessor for the County where the real property is located.

9.  As of March 19, 2019, the unpaid principal balance of the Note is $184,505.52.

10. The current payment amount is $1,467.92 and includes principal, interest, taxes and insurance.

11. Debtor is in default pursuant to the terms of the Note and Deed of Trust by failure to make payments as due.  As of March 19, 2019 Debtor is currently in default of 5 payments, along with other fees and charges.  A payment history is provided.  The approximate amount necessary to cure the default that gave rise to this motion is estimated to be:

| 3 Payments at $1,372.33 | $4,116.99 |
| 2 Payments at $1,467.92 | $2,935.84 |
| Late Fees | $319.92 |
| Property Inspections | $42.00 |
| Bankruptcy Attorney Fees & Costs | $931.00 |
| Estimated Total | $8,345.75 |

12. An additional payment of $1,467.92 came due on April 1, 2019.

13. The loan was not active in foreclosure prior to the bankruptcy petition being filed.

14. To the best knowledge of the undersigned attorney, the Debtor has not recently requested a loan modification.

15. The approximate payoff to Movant of the entire debt owed as of March 19, 2019 is estimated to be:

| Unpaid Principal Balance | $184,505.52 |
| Interest | $4,324.07 |
| Late Fees | $319.92 |
| (Suspense) | -$0.00 |
| Property Inspections | $42.00 |
| PMI | $127.04 |
| Escrow Advance | $1,735.35 |
| Bankruptcy Attorney Fees & Costs | $931.00 |
| Estimated Total | $191,984.90 |

16. Additional liens against the property include:
    a.  Colorado H&F/Dovenmu in the amount of $9,327.00 pursuant to Debtor's Schedules.

17. Movant has grounds for relief from stay pursuant to 11 U.S.C. § 362(d)(2).  The property value, for purposes of this motion, should be reduced by the foreclosure costs, subsequent resale costs, and weighed against the increasing debt amount.  *See In re Mountain Side Holdings, Inc., 142 B.R. 421, 423 (Bankr.D.Colo.1992) and In re Steffens, 275 B.R. 570, (Bankr.D.Colo2002) and In re Dickinson, 185 B.R.76 (Bankr.D.Colo.1992).*  The Debtor has no measurable equity in the

property.  The property is not necessary to an effective reorganization.  Debtor's case is a Chapter 7 liquidation, not reorganization.

18.   In addition or in the alternative, Movant has cause for relief from stay pursuant to 362(d)(1). Debtor has failed to make payments, and the increasing debt and the costs of obtaining and liquidating the property, leave Movant without adequate protection. Debtor's default constitutes cause for relief from stay pursuant to 362(d)(1).

19.   As further relief sought by Creditor in this Motion, Creditor requests that this Court's Order granting relief from stay be effective immediately, and not stayed pursuant to F.R.B.P. 4001(a)(3).

If the notice filed herein regarding this motion specifies a hearing date more than 30 days from filing the motion, Movant hereby waives its rights to have this matter heard sooner.

WHEREFORE, Movant requests this Court to enter an Order Granting Relief from Stay.

Dated: April 3, 2019
Attorneys for COLORADO HOUSING AND FINANCE AUTHORITY
JANEWAY LAW FIRM, P.C.

Lynn M. Janeway #15592
David R. Doughty #40042
Elizabeth S. Marcus #16092
Alison L. Berry #34531
Nicholas H. Santarelli #46592
9800 S. Meridian Blvd., Suite 400
Englewood, CO 80112
Phone: (303) 706-9990
Fax: (303) 706-9994
bankruptcy@janewaylaw.com
JLF No.: 19-021194

In re:
RACHEL ELOISE GONSER, XXX-XX-1014
RICHARD GLENN MCNEAL, III, XXX-XX-3734

Case Number:         19-11935 JGR
Chapter:             7

AFFIDAVIT PURSUANT TO THE SERVICEMEMBER CIVIL RELIEF ACT OF 2003

I, Amanda Bishop, being of lawful age, first duly sworn, hereby state as follows:

I am over the age of 18 and am an employee of JANEWAY LAW FIRM, P.C.

On April 3, 2019, I, Amanda Bishop; performed a search on the Department of Defense Manpower Data Center. Upon searching the information data banks of the Department of Defense Manpower Data Center (DMDC), the DMDC does not possess any information indicating that the Debtor, RACHEL ELOISE GONSER AND RICHARD GLENN MCNEAL, III, is currently on active duty as to all branches of the Military.

Dated:   April 3, 2019

By:   _____
        Amanda Bishop

Title:   Paralegal

Subscribed and affirmed before me in Douglas County, State of Colorado on April 3, 2019.

Seal and Commission expiration date:

_____
(Notary's official signature)

JLF #: 19-021194

KAREN E KOTTENSTETTE
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20004009445
MY COMMISSION EXPIRES APRIL 15, 2020

Department of Defense Manpower Data Center

Results as of : Apr-03-2019 05:51:29 PM

SCRA 4.10



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

| | |
|---|---|
| SSN: | XXX-XX-1014 |
| Birth Date: | |
| Last Name: | GONSER |
| First Name: | RACHEL |
| Middle Name: | ELOISE |
| Status As Of: | Apr-03-2019 |
| Certificate ID: | 74FXLMSG3QJTHJH |

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Michael V. Sorrento*

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA 93955

Department of Defense Manpower Data Center

Results as of : Apr-03-2019 05:51:05 PM

SCRA 4.10



### Status Report
### Pursuant to Servicemembers Civil Relief Act

| | |
|---|---|
| SSN: | XXX-XX-3734 |
| Birth Date: | |
| Last Name: | MCNEAL |
| First Name: | RICHARD |
| Middle Name: | GLENN |
| Status As Of: | Apr-03-2019 |
| Certificate ID: | BJ9RK65DZXN6X2V |

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | NA | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Michael V. Sorrento*

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA  93955

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

In re:                                  Case No:      19-11935 - JGR
RACHEL ELOISE GONSER,
Debtor

                                      Chapter       7

COLORADO HOUSING AND FINANCE AUTHORITY
and its SUCCESSORS, ASSIGNS, SERVICERS,
TRUSTEES AND INVESTORS,
Creditor
vs.
RACHEL ELOISE GONSER and KEVIN P. KUBIE,
Trustee
Respondents

**NOTICE OF MOTION FOR RELIEF FROM STAY
AND OPPORTUNITY FOR HEARING PURSUANT TO 11 U.S.C. § 362(d)
OBJECTION DEADLINE:  April 23, 2019**

       YOU ARE HEREBY NOTIFIED that a Motion for Relief from Stay has been filed, a copy of which is attached hereto.

       A hearing on the Motion has been set for **April 30, 2019 at 9:30 A.M. at the U.S. Custom House, 721 19ᵗʰ Street, in COURTROOM B, Denver, Colorado 80202-2508.**    The hearing will be conducted in accordance with the provisions of Local Bankruptcy Rule 4001-1.

       IF YOU DESIRE TO OPPOSE THIS MOTION, you must file with this court a WRITTEN OBJECTION to the motion on or before the objection deadline stated above and serve a copy upon Movant's attorney, whose address is listed below.

       If you file an objection, you are REQUIRED to comply with L.B.R. 4001-1 regarding hearing procedures, including (1) the timely submission and exchange of witness lists and exhibits and (2) attendance at the above-scheduled hearing in person or through counsel, if represented.

       **IF YOU FAIL TO FILE AN OBJECTION**, the scheduled hearing will be **vacated**, and an order granting the relief requested may be granted without further notice to you.

Dated:  April 3, 2019
Janeway Law Firm, P.C.
Attorneys for COLORADO HOUSING AND FINANCE AUTHORITY

Lynn M. Janeway #15592
David R. Doughty #40042
Elizabeth S. Marcus #16092
Alison L. Berry #34531
Nicholas H. Santarelli #46592
9800 S. Meridian Blvd., Suite 400
Englewood, CO 80112
Phone: (303) 706-9990 Fax: (303) 706-9994
bankruptcy@janewaylaw.comJLF No.: 19-021194

<u>Certificate of Service</u>

The undersigned hereby certifies that on April 3, 2019 a copy of the attached Notice of Hearing or Preliminary Hearing with a copy of the Motion for Relief from Stay was deposited into U.S. mail in an envelope with prepaid, first class postage and addressed as follows:

RACHEL ELOISE GONSER
2333 E. WILLAMETTE AVE.
COLORADO SPRINGS, CO 80909

TODD WAGNER
3969 E. ARAPAHOE RD.
STE. 200
CENTENNIAL, CO 80122

US TRUSTEE
PAPER COPY NOT MAILED PURSUANT TO L.B.R. 4001-1

KEVIN P. KUBIE
PO BOX 8928
PUEBLO, CO 81008-8928

_____
Amanda Bishop

# NOTE

MIN: ████████████

Loan Number: ████████████

FHA Case No: ████████████

DECEMBER 19, 2017      Houston      TEXAS

[Date]      [City]      [State]

2333 E Willamette Ave, Colorado Springs, Colorado 80909

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $186,558.00 (this amount is called "Principal"), plus interest to the order of the Lender. The Lender is Envoy Mortgage, LTD, Limited Partnership
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 5.000 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on FEBRUARY 1, 2018 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest and other items in the order described in the Security Instrument before Principal. If, on JANUARY 1, 2048 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 660101, Dallas, Texas 75266-0101

or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 1,001.48

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to any accrued and unpaid interest on the Prepayment amount before applying my

MULTISTATE FHA FIXED RATE NOTE
USFHA.NTE 06/14/16      Page 1 of 4      DocMagic eForms
www.docmagic.com

Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of      15      calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be      4.000     % of the overdue payment of Principal and Interest (P&I). I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

MULTISTATE FHA FIXED RATE NOTE
USFHA.NTE  06/14/16                                    Page 2 of 4                                    DocMagic *eForms*
                                                                                                      www.docmagic.com

## 9.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**

MULTISTATE FHA FIXED RATE NOTE
USFHA.NTE  06/14/16                                Page 3 of 4                                *DocMagic eForms*
                                                                                              *www.docmagic.com*

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.


_____ (Seal)
Richard Glenn McNeal III           -Borrower

_____ (Seal)
Rachel Eloise Gonser               -Borrower


_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower


_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower


                                        *[Sign Original Only]*

Loan Originator: Beverly Creswell, NMLSR ID 301804
Loan Originator Organization: Envoy Mortgage, Ltd., NMLSR ID 6666


PAY TO THE ORDER OF
WITHOUT RECOURSE                    Colorado Housing and
ENVOY MORTGAGE LTD,                 Finance Authority
Limited Partnership

BY: _____

          James Day
ITS: _____
          CFO
      (Printed Name and Title)


MULTISTATE FHA FIXED RATE NOTE
USFHA.NTE  06/14/16                 Page 4 of 4                DocMagic *eForms*
                                                              www.docmagic.com

PAY TO THE ORDER OF
WITHOUT RECOURSE
COLORADO HOUSING AND FINANCE AUTHORITY

John Ratcliff
Secondary Marketing Manager

217154042          12/21/2017 10:18 AM
PGS   10           $58.00    DF $0.00
Electronically Recorded Official Records El Paso County CO
Chuck Broerman, Clerk and Recorder
TD1000    N

After Recording Return To:
Envoy Mortgage, LTD.
5100 Westheimer Rd., Ste. 320
Houston, Texas 77056
Loan Number: ███████

———————— [Space Above This Line For Recording Data] ————————

FHA Case No: ███████          **DEED OF TRUST**

MIN: ███████                                    MERS Phone: 888-679-6377

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19 and 20. Certain rules regarding the usage of words used in this document are also provided in Section 15.

**(A)** "**Security Instrument**" means this document, which is dated   DECEMBER 19, 2017       , together with all Riders to this document.
**(B)** "**Borrower**" is   Richard Glenn McNeal III an unmarried man, and Rachel Eloise Gonser an unmarried woman, ~~as joint tenants with rights of survivorship~~   *as tenants in common*   RGm
Borrower is the trustor under this Security Instrument.
**(C)** "**Lender**" is   Envoy Mortgage, LTD

Lender is a   LIMITED PARTNERSHIP                                              organized
and existing under the laws of      TEXAS
Lender's address is   5100 Westheimer Rd., Ste. 320, Houston, Texas 77056

**(D)** "**Trustee**" is the Public Trustee of   El Paso                                County, Colorado.
**(E)** "**MERS**" is  Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F)** "**Note**" means the promissory note signed by Borrower and dated    DECEMBER 19, 2017
The Note states that Borrower owes Lender   ONE HUNDRED EIGHTY-SIX THOUSAND FIVE HUNDRED
FIFTY-EIGHT AND 00/100                    Dollars (U.S. $  186,558.00                )
plus interest.  Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   JANUARY 1, 2048
**(G)** "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."
**(H)** "**Loan**" means the debt evidenced by the Note, plus interest, late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(I)** "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider        ☐ Planned Unit Development Rider
☐ Condominium Rider            ☐ Other(s) [specify]

**(J)** "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(K)** "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.



COLORADO FHA DEED OF TRUST - MERS
CODOT22.FHA  09/14/15                        Page 1 of 10                          DocMagic ℰℱℴℛℳℴ
                                                                                  www.docmagic.com

After Recording Return To:
Envoy Mortgage, LTD.
5100 Westheimer Rd., Ste. 320
Houston, Texas 77056
Loan Number: ███████

ID ___2171 5 4042___
County ___El Paso___
Date 12 21 17   Time 1018 A

——————————— [Space Above This Line For Recording Data] ———————————

FHA Case No:
███████

# DEED OF TRUST

MIN: ███████

**MERS Phone: 888-679-6377**

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19 and 20. Certain rules regarding the usage of words used in this document are also provided in Section 15.

**(A)   "Security Instrument"** means this document, which is dated   DECEMBER 19, 2017                , together with all Riders to this document.

**(B)   "Borrower"** is   Richard Glenn McNeal III an unmarried man, and Rachel Eloise Gonser an unmarried woman, ~~as Joint Tenants with Rights of Survivorship~~ *as tenants in common*  RGm REG

Borrower is the trustor under this Security Instrument.

**(C)   "Lender"** is   Envoy Mortgage, LTD

Lender is a   LIMITED PARTNERSHIP                                                    organized and existing under the laws of   TEXAS
Lender's address is   5100 Westheimer Rd., Ste. 320, Houston, Texas 77056

**(D)   "Trustee"** is the Public Trustee of   El Paso                                   County, Colorado.

**(E)   "MERS"** is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  **MERS is the beneficiary under this Security Instrument.**  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F)   "Note"** means the promissory note signed by Borrower and dated   DECEMBER 19, 2017                .
The Note states that Borrower owes Lender   ONE HUNDRED EIGHTY-SIX THOUSAND FIVE HUNDRED FIFTY-EIGHT AND 00/100                            Dollars (U.S. $   186,558.00                )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   JANUARY 1, 2048                .

**(G)   "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H)   "Loan"** means the debt evidenced by the Note, plus interest, late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I)   "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider          ☐ Planned Unit Development Rider
☐ Condominium Rider              ☐ Other(s) [specify]

**(J)   "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K)   "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.



COLORADO FHA DEED OF TRUST - MERS
CODOTZ2.FHA  09/14/15

Page 1 of 10

DocMagic *eForms*
www.docmagic.com

**(L)** **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers

**(M)** **"Escrow Items"** means those items that are described in Section 3

**(N)** **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for (i) damage to, or destruction of, the Property, (ii) condemnation or other taking of all or any part of the Property, (iii) conveyance in lieu of condemnation, or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property

**(O)** **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan

**(P)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument

**(Q)** **"RESPA"** means the Real Estate Settlement Procedures Act (12 U S C  §2601 et seq ) and its implementing regulation, Regulation X (12 C F R  Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA

**(R)** **"Secretary"** means the Secretary of the United States Department of Housing and Urban Development or his designee

**(S)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS  This Security Instrument secures to Lender  (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note, and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note  For this purpose, Borrower, in consideration of the debt and the trust herein created, does hereby mortgage, grant and convey to Trustee, in trust, with power of sale, the following described property located in the

COUNTY                     of                     El Paso
[Type of Recording Jurisdiction]                     [Name of Recording Jurisdiction]

Lot 1, Block 26, J.R  Marks Subdivision of Blocks 16, 25 and 26, Knob Hill
Addition, County of El Paso, State of Colorado

which currently has the address of   2333 E Willamette Ave
                                                                            [Street]

Colorado Springs               , Colorado          80909          ("Property Address")
[City]                                                     [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property  All replacements and additions shall also be covered by this Security Instrument  All of the foregoing is referred to in this Security Instrument as the "Property "  Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right  to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record  Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record and liens for taxes for the current year not yet due and payable

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows

**1.    Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note  Borrower shall also pay funds for Escrow Items pursuant to Section 3  Payments due under the Note and this Security Instrument shall be made in U S  currency  However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity, or (d) Electronic Funds Transfer

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14  Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current  Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted  If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds  Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current  If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower  If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure  No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument

**2.    Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority

First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums,

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required,

Third, to interest due under the Note,

Fourth, to amortization of the principal of the Note, and, Fifth, to late charges due under the Note

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount of the Periodic Payments

**3.    Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for  (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property, (b) leasehold payments or ground rents on the Property, if any, (c) premiums for any and all insurance required by Lender under Section 5, and (d) Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums  These items are called "Escrow Items " At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section  Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items  Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time  Any such waiver may only be in writing  In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require  Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9  If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount  Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA  Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank  Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA  Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge  Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds  Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds  Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA  If there is a shortage of Funds held in escrow, as defined under RESPA,

Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4.   Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement, (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded, or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

**5.   Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are

COLORADO FHA DEED OF TRUST - MERS
CODOTZ2.FHA   09/14/15                                    Page 4 of 10                                    DocMagic *eForms*
                                                                                                        www.docmagic.com

applicable to the coverage of the Property  Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due

**6.  Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower or unless extenuating circumstances exist which are beyond Borrower's control

**7.  Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property  Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage  If insurance or condemnation proceeds are paid in connection with damage to the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed  If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration

If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal  Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments

Lender or its agent may make reasonable entries upon and inspections of the Property  If it has reasonable cause, Lender may inspect the interior of the improvements on the Property  Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause

**8.  Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan  Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence

**9.  Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property  Lender's actions can include, but are not limited to  (a) paying any sums secured by a lien which has priority over this Security Instrument, (b) appearing in court, and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding  Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off  Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so  It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease  If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing

**10.  Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened  During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly  Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds  If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower  Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value,

COLORADO FHA DEED OF TRUST - MERS
CODOTZ2 FHA  09/14/15                                    Page 5 of 10                    *DocMagic eForms*
                                                                                        www.docmagic.com

unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value Any balance shall be paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer") (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument, (b) is not personally obligated to pay the sums secured by this Security Instrument, and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees Lender may collect fees and charges authorized by the Secretary Lender may not charge fees that are expressly prohibited by this Security Instrument, or by Applicable Law

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Note holder agrees in writing to those changes Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender Borrower shall promptly notify Lender of Borrower's change of address If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure There may be only one designated notice address under this Security Instrument at any one time Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower Any notice in connection with this

---

COLORADO FHA DEED OF TRUST - MERS
CODOTZ2 FHA  09/14/15                          Page 6 of 10                          DocMagic *eForms*
                                                                                    www.docmagic.com

Security Instrument shall not be deemed to have been given to Lender until actually received by Lender If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located

All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision

As used in this Security Instrument (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender, (b) words in the singular shall mean and include the plural and vice versa, and (c) the word "may" gives sole discretion without any obligation to take any action

**16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law

If Lender exercises this option, Lender shall give Borrower notice of acceleration The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a mortgage Those conditions are that Borrower (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred, (b) cures any default of any other covenants or agreements, (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged However, Lender is not required to reinstate if (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceedings, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity, or (d) Electronic Funds Transfer Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred However, this right to reinstate shall not apply in the case of acceleration under Section 17

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser

**20. Borrower Not Third-Party Beneficiary to Contract of Insurance** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law

**21. Hazardous Substances.** As used in this Section 21 (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials, (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection, (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law, and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup

---

COLORADO FHA DEED OF TRUST - MERS
CODOTZ2.FHA   09/14/15                           Page 7 of 10                       *DocMagic eForms*
                                                                                   *www.docmagic.com*

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

### NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Lender shall mail a copy of the notice to Borrower as provided in Section 14. Trustee shall record a copy of the notice in the county in which the Property is located. Trustee shall publish a notice of sale for the time and in the manner provided by Applicable Law and shall mail copies of the notice of sale in the manner prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's certificate describing the Property and the time the purchaser will be entitled to Trustee's deed. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall request that Trustee release this Security Instrument and shall produce for Trustee, duly cancelled, all notes evidencing debts secured by this Security Instrument. Trustee shall release this Security Instrument without further inquiry or liability. Borrower shall pay any recordation costs and the statutory Trustee's fees.**

**24. Waiver of Homestead. Borrower waives all right of homestead exemption in the Property.**

### [REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

COLORADO FHA DEED OF TRUST - MERS
CODOTZ2.FHA   09/14/15                        Page 8 of 10                        *DocMagic eForms*
www.docmagic.com

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
Richard Glenn McNeal III        -Borrower

_____ (Seal)
Rachel Eloise Gonser        -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

Witness: _____

Witness: _____

COLORADO FHA DEED OF TRUST - MERS
CODOTZ2.FHA  09/14/15                    Page 9 of 10                    DocMagic *eForms*
                                                                         www.docmagic.com

———————————————— [Space Below This Line For Acknowledgment] ————————————————

State of __COLORADO__

County of __El Paso__

The foregoing instrument was acknowledged before me this _9th day of December 2017_
(date)

by __Richard Glenn McNeal III AND Rachel Eloise Gonser__

_____

_____

(name of person acknowledged)

_____
(Signature of Person Taking Acknowledgment)

CHRISTINE DAWN HOPPER
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20124070882
MY COMMISSION EXPIRES 11/01/2020

_____
(Title or Rank)

(Seal)

_____
(Serial Number, if any)

CHRISTINE DAWN HOPPER
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20124070882
MY COMMISSION EXPIRES 11/01/2020

Loan Originator: Beverly Creswell, NMLSR ID 301804
Loan Originator Organization: Envoy Mortgage, Ltd., NMLSR ID 6666
COLORADO FHA DEED OF TRUST - MERS
CODOTZ2.FHA  09/14/15                    Page 10 of 10                    DocMagic eForms
                                                                         www.docmagic.com

219028330
PGS 1
$13.00   DF $0.00
3/20/2019 1:58 PM
Electronically Recorded Official Records El Paso County CO
Chuck Broerman, Clerk and Recorder
TD1000   N

WHEN RECORDED, RETURN TO **CHFA - Loan Servicing A, 1981 Blake Street, Denver, Colorado 80202 ATTN: POST-CLOSING**

# ASSIGNMENT OF DEED OF TRUST

For value received, Mortgage Electronic Registration Systems, Inc. as nominee for, **Envoy Mortgage, LTD**, its successors and assigns, the beneficiary of the deed of trust hereinafter described ("Deed of Trust"),

**hereby assigns and transfers** to Colorado Housing and Finance Authority, its successors and assigns, of all its right, title and interest in and to the Deed of Trust executed by **Richard Glenn McNeal III an unmarried man, and Rachel Eloise Gonser an unmarried woman as tenants in common** for the benefit of Mortgage Electronic Registration Systems, Inc., as nominee for **Envoy Mortgage, LTD**, its successors and assigns dated **12/19/2017** and recorded on **12/21/2017** in the office of the Clerk and Recorder of **El Paso**, State of **Colorado** at Reception# , **217154042** with respect to the property also known by street and number as:

**2333 E Willamette Ave Colorado Springs, CO 80909**

Date:  03/20/2019

Mortgage Electronic Registration Systems, Inc.

By: _____

**Dolores Higgins, Assistant Secretary**

State of **Colorado**,}
County of **Denver**}SS:

The foregoing Assignment of Deed of Trust was acknowledged before me, on  03/20/2019  by **Dolores Higgins** , Assistant Secretary of Mortgage Electronic Registration Systems, Inc., on behalf of said corporation.

My commission expires: **12/09/2020**

_____

Notary Public **Alejandro Casillas**

```
ALEJANDRO CASILLAS
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20044034855
MY COMMISSION EXPIRES DECEMBER 9, 2020
```

DAN  # ▮▮▮▮▮▮▮▮▮▮▮▮

Lenders Loan Number: ▮▮▮▮▮▮▮▮
MIN: ▮▮▮▮▮▮▮▮▮   MERS Phone#: 888-679-6377
P.O. Box 2026, Flint, MI 48501-2026

```
P309 LN                              MORTGAGE LOAN HISTORY                        03-19-19
NAME RG MCNEAL I              INV-LN                        DUE 11-01-18 TYPE 11
BR DT MAN W P-TYPE 1 INT .0500000 FIRST PB    184,505.52  2ND PB              .00
HUD     .00  NET   1372.33  SF .00500000 SUSP        .00 STOP D B P F N A D L
REP     .00  RES        .00                                  8 0 0 0 8 5 0 1
APP              03-04        03-04        02-11        02-11          02-04
SEG$/DUE         11-18        01-20        11-18        02-19          11-18
TYPE/TRAN        1  61        3  10        1  61        3  12          1  61
AMOUNT          127.04       127.04-      491.62       491.62-        127.04
PRIN-PD            .00          .00          .00          .00            .00
PRIN-BAL    184,505.52   184,505.52   184,505.52   184,505.52     184,505.52
INT-PD            .00          .00          .00          .00            .00
ESC-PD          127.04       127.04-      491.62       491.62-        127.04
ESC-BAL           .00       127.04-         .00       491.62-           .00
A&H-INS           .00          .00          .00          .00            .00
LIFE-INS          .00          .00          .00          .00            .00
LC/FEES           .00          .00          .00          .00            .00
MISC-PD           .00          .00          .00          .00            .00
ADV-BAL       1,735.35     1,608.31     1,608.31     1,116.69       1,116.69
SUSP              .00          .00          .00          .00            .00
SC/PAYEE              F.H.A.                         05041

PAGE 00001 OF 00009  TRANS AVAILABLE        41  OLDEST TRAN 03-02-18 /P
```

```
P309 LN [        ]              MORTGAGE LOAN HISTORY                      03-19-19
NAME RG MCNEAL I                INV-LN[         ]        DUE 11-01-18 TYPE 11
BR DT MAN W P-TYPE 1 INT .0500000 FIRST PB    184,505.52  2ND PB         .00
HUD    .00  NET    1372.33  SF .00500000 SUSP       .00 STOP D B P F N A D L
REP    .00  RES       .00                               8 0 0 0 8 5 0 1
```

| | | | | | |
|---|---|---|---|---|---|
| APP | 02-04 | 01-03 | 01-03 | 12-17 | 12-04 |
| SEG$/DUE | 01-20 | 11-18 | 01-19 | 11-18 | 11-18 |
| TYPE/TRAN | 3  10 | 1  61 | 3  10 | 1  52 | 1  61 |
| AMOUNT | 127.04- | 129.00 | 129.00- | .00 | 129.00 |
| PRIN-PD | .00 | .00 | .00 | .00 | .00 |
| PRIN-BAL | 184,505.52 | 184,505.52 | 184,505.52 | 184,505.52 | 184,505.52 |
| INT-PD | .00 | .00 | .00 | .00 | .00 |
| ESC-PD | 127.04- | 129.00 | 129.00- | .00 | 129.00 |
| ESC-BAL | 127.04- | .00 | 129.00- | .00 | .00 |
| A&H-INS | .00 | .00 | .00 | .00 | .00 |
| LIFE-INS | .00 | .00 | .00 | .00 | .00 |
| LC/FEES | .00 | .00 | .00 | 1  40.06- | .00 |
| MISC-PD | .00 | .00 | .00 | .00 | .00 |
| ADV-BAL | 989.65 | 989.65 | 860.65 | 860.65 | 860.65 |
| SUSP | .00 | .00 | .00 | .00 | .00 |
| SC/PAYEE | F.H.A. | | F.H.A. | | |

```
PAGE 00002 OF 00009  TRANS AVAILABLE     41  OLDEST TRAN 03-02-18 /P
```

```
P309 LN                             MORTGAGE LOAN HISTORY                        03-19-19
NAME RG MCNEAL I            INV-LN                     DUE 11-01-18 TYPE 11
BR DT MAN W P-TYPE 1 INT .0500000 FIRST PB    184,505.52  2ND PB            .00
HUD    .00  NET   1372.33 SF .00500000 SUSP        .00 STOP D B P F N A D L
REP    .00  RES       .00                             8 0 0 0 8 5 0 1
APP            12-04       12-03       12-03       11-30        11-30
SEG$/DUE       01-19       10-18       10-18       10-18        12-18
TYPE/TRAN     3  10       1  68       1  73       1  61        3  51
AMOUNT     129.00-         .00    1,372.33    1,102.50      2,406.51-
PRIN-PD        .00         .00      231.74        .00            .00
PRIN-BAL  184,505.52  184,505.52  184,505.52  184,737.26  184,737.26
INT-PD         .00         .00      769.74        .00            .00
ESC-PD     129.00-     370.85-     370.85    1,102.50      2,406.51-
ESC-BAL    129.00-         .00      370.85        .00      1,102.50-
A&H-INS        .00         .00         .00        .00            .00
LIFE-INS       .00         .00         .00        .00            .00
LC/FEES        .00         .00         .00        .00            .00
MISC-PD        .00         .00         .00        .00            .00
ADV-BAL     731.65      731.65    1,102.50    1,102.50          .00
SUSP           .00         .00         .00        .00            .00
SC/PAYEE   F.H.A.      ♥           ♥                       A1623

PAGE 00003 OF 00009  TRANS AVAILABLE       41  OLDEST TRAN 03-02-18 /F
```

```
 P309 LN                          MORTGAGE LOAN HISTORY                        03-19-19
NAME RG MCNEAL I              INV-LN                      DUE 11-01-18 TYPE 11
BR DT MAN W P-TYPE 1 INT .0500000 FIRST PB      184,505.52  2ND PB        .00
HUD    .00  NET      1372.33  SF .00500000 SUSP       .00 STOP D B P F N A D L
REP    .00  RES      .00                                    8 0 0 0 8 5 0 1
 APP              11-16          11-02          10-16         10-12         10-02
 SEG$/DUE         10-18          01-19          10-18         09-18         01-19
 TYPE/TRAN      1  52          3  10          1  52         1  73         3  10
 AMOUNT           .00       129.00-          .00      1,372.33       129.00-
 PRIN-PD          .00          .00          .00        230.78          .00
 PRIN-BAL    184,737.26    184,737.26    184,737.26    184,737.26    184,968.04
 INT-PD          .00          .00          .00        770.70          .00
 ESC-PD          .00       129.00-          .00        370.85       129.00-
 ESC-BAL     1,304.01     1,304.01     1,433.01     1,433.01     1,062.16
 A&H-INS         .00          .00          .00          .00          .00
 LIFE-INS        .00          .00          .00          .00          .00
 LC/FEES  1     40.06-         .00  1     40.06-         .00          .00
 MISC-PD         .00          .00          .00          .00          .00
 ADV-BAL         .00          .00          .00          .00          .00
 SUSP            .00          .00          .00          .00          .00
 SC/PAYEE              F.H.A.                         w              F.H.A.

PAGE 00004 OF 00009  TRANS AVAILABLE      41  OLDEST TRAN 03-02-18 /P
```

```
P309 LN                          MORTGAGE LOAN HISTORY                        03-19-19
NAME RG MCNEAL I              INV-LN                    DUE 11-01-18 TYPE 11
BR DT MAN W P-TYPE 1 INT .0500000 FIRST PB    184,505.52  2ND PB          .00
HUD     .00  NET    1372.33  SF .00500000 SUSP       .00 STOP D B P F N A D L
REP     .00  RES         .00                              8 0 0 0 8 5 0 1
APP               09-17        09-07        09-05        08-16        08-02
SEG$/DUE          09-18        08-18        01-19        08-18        01-19
TYPE/TRAN        1  52        1  73        3  10        1  52        3  10
AMOUNT            .00     1,372.33      129.00-          .00       129.00-
PRIN-PD           .00       229.82          .00          .00          .00
PRIN-BAL    184,968.04  184,968.04  185,197.86  185,197.86  185,197.86
INT-PD            .00       771.66          .00          .00          .00
ESC-PD            .00       370.85      129.00-          .00       129.00-
ESC-BAL     1,191.16    1,191.16      820.31       949.31       949.31
A&H-INS           .00          .00          .00          .00          .00
LIFE-INS          .00          .00          .00          .00          .00
LC/FEES   1      40.06-        .00          .00  1      40.06-        .00
MISC-PD           .00          .00          .00          .00          .00
ADV-BAL           .00          .00          .00          .00          .00
SUSP              .00          .00          .00          .00          .00
SC/PAYEE               w              F.H.A.                      F.H.A.

PAGE 00005 OF 00009  TRANS AVAILABLE     41  OLDEST TRAN 03-02-18 /P
```

```
 P309 LN                          MORTGAGE LOAN HISTORY                          03-19-19
NAME RG MCNEAL I               INV-LN                    DUE 11-01-18 TYPE 11
BR DT MAN W P-TYPE 1 INT .0500000 FIRST PB     184,505.52  2ND PB          .00
HUD      .00  NET     1372.33  SF .00500000 SUSP        .00 STOP D B P F N A D L
REP      .00  RES         .00                                8 0 0 0 8 5 0 1
APP             07-31          07-16          07-03          06-18          06-04
SEG$/DUE        07-18          07-18          01-19          06-18          01-19
TYPE/TRAN     1  73         1  52         3  10          1  73         3  10
AMOUNT       1,372.33           .00       129.00-      1,372.33         129.00-
PRIN-PD        228.87           .00           .00        227.92             .00
PRIN-BAL   185,197.86    185,426.73    185,426.73    185,426.73    185,654.65
INT-PD         772.61           .00           .00        773.56             .00
ESC-PD         370.85           .00       129.00-        370.85         129.00-
ESC-BAL      1,078.31        707.46        707.46        836.46         465.61
A&H-INS           .00           .00           .00           .00             .00
LIFE-INS          .00           .00           .00           .00             .00
LC/FEES           .00  1      40.06-          .00           .00             .00
MISC-PD           .00           .00           .00           .00             .00
ADV-BAL           .00           .00           .00           .00             .00
SUSP              .00           .00           .00           .00             .00
SC/PAYEE   *                          F.H.A.       *                    F.H.A.

PAGE 00006 OF 00009  TRANS AVAILABLE      41  OLDEST TRAN 03-02-18 /P
```

```
P309 LN                          MORTGAGE LOAN HISTORY                        03-19-19
NAME RG MCNEAL I              INV-LN                     DUE 11-01-18 TYPE 11
BR DT MAN W P-TYPE 1 INT .0500000 FIRST PB      184,505.52  2ND PB          .00
HUD    .00  NET    1372.33  SF .00500000 SUSP         .00 STOP D B P F N A D L
REP    .00  RES       .00                                  8 0 0 0 8 5 0 1
APP            05-30        05-18         05-16         05-02         04-18
SEG$/DUE       05-18        05-18         05-18         01-19         04-18
TYPE/TRAN    3  12       1   73        1   52        3   10        1   72
AMOUNT      465.61-    1,348.44           .00       129.00-     1,349.00
PRIN-PD         .00      226.97           .00           .00       226.03
PRIN-BAL   185,654.65   185,654.65   185,881.62   185,881.62   185,881.62
INT-PD          .00      774.51           .00           .00       775.45
ESC-PD       465.61-     346.96           .00       129.00-      346.96
ESC-BAL      594.61    1,060.22       713.26       713.26       842.26
A&H-INS         .00          .00           .00           .00          .00
LIFE-INS        .00          .00           .00           .00          .00
LC/FEES         .00          .00  1     40.06-          .00  1        .56
MISC-PD         .00          .00           .00           .00          .00
ADV-BAL         .00          .00           .00           .00          .00
SUSP            .00          .00           .00           .00          .00
SC/PAYEE   05041        w                           F.H.A.         w

PAGE 00007 OF 00009  TRANS AVAILABLE       41  OLDEST TRAN 03-02-18 /P
```

```
P309 LN                         MORTGAGE LOAN HISTORY                      03-19-19
NAME RG MCNEAL I                INV-LN                    DUE 11-01-18 TYPE 11
BR DT MAN W P-TYPE 1 INT .0500000 FIRST PB     184,505.52  2ND PB              .00
HUD     .00  NET    1372.33  SF .00500000 SUSP       .00 STOP D B P F N A D L
REP     .00  RES        .00                               8 0 0 0 8 5 0 1
APP              04-16         04-03        03-29        03-29           03-12
SEG$/DUE         04-18         01-19        04-18        03-18           03-18
TYPE/TRAN      1  52         3  10        1  75        1  73          1  75
AMOUNT           .00       129.00-          .56     1,348.44            .56
PRIN-PD          .00          .00           .56       225.09            .55
PRIN-BAL    186,107.65   186,107.65   186,107.65   186,108.21     186,333.30
INT-PD           .00          .00           .00       776.39            .00
ESC-PD           .00       129.00-          .00       346.96            .01
ESC-BAL       495.30       495.30        624.30       624.30         277.34
A&H-INS          .00          .00           .00          .00            .00
LIFE-INS         .00          .00           .00          .00            .00
LC/FEES   1    40.06-         .00           .00          .00            .00
MISC-PD          .00          .00           .00          .00            .00
ADV-BAL          .00          .00           .00          .00            .00
SUSP             .00          .00           .00          .00            .00
SC/PAYEE               F.H.A.        *             *              *

PAGE 00008 OF 00009  TRANS AVAILABLE      41  OLDEST TRAN 03-02-18 /P
```

```
P309 LN                        MORTGAGE LOAN HISTORY                      03-19-19
NAME RG MCNEAL I              INV-LN                        DUE 11-01-18 TYPE 11
BR DT MAN W P-TYPE 1 INT .0500000 FIRST PB     184,505.52  2ND PB          .00
HUD     .00  NET    1372.33 SF .00500000 SUSP          .00 STOP D B P F N A D L
REP     .00  RES       .00                                 8 0 0 0 8 5 0 1
APP            03-02         02-06         02-06
SEG$/DUE       01-19         03-18         03-18
TYPE/TRAN      3  10         1  70         1  42
AMOUNT       129.00-       406.33           .00
PRIN-PD         .00           .00    186,333.85-
PRIN-BAL  186,333.85   186,333.85    186,333.85
INT-PD          .00           .00           .00
ESC-PD       129.00-       406.33           .00
ESC-BAL      277.33        406.33           .00
A&H-INS         .00           .00           .00
LIFE-INS        .00           .00           .00
LC/FEES         .00           .00           .00
MISC-PD         .00           .00           .00
ADV-BAL         .00           .00           .00
SUSP            .00           .00           .00
SC/PAYEE   F.H.A.

PAGE 00009 OF 00009  TRANS AVAILABLE    43  OLDEST TRAN 02-06-18 /P
```

```
P309 LN                             MORTGAGE LOAN HISTORY                          03-19-19
NAME RG MCNEAL I                 INV-LN                        DUE 11-01-18 TYPE 11
BR DT MAN W P-TYPE 1 INT .0500000 FIRST PB     184,505.52  2ND PB              .00
HUD      .00  NET     1372.33  SF .00500000 SUSP         .00 STOP D B P F N A D L
REP      .00  RES         .00                                   8 0 0 0 8 5 0 1
APP               03-02        02-06         02-06
SEG$/DUE          01-19        03-18         03-18
TYPE/TRAN         3  10        1  70         1  42
AMOUNT          129.00-      406.33           .00
PRIN-PD             .00          .00   186,333.85-
PRIN-BAL    186,333.85   186,333.85   186,333.85
INT-PD             .00          .00           .00
ESC-PD          129.00-      406.33           .00
ESC-BAL         277.33       406.33           .00
A&H-INS            .00          .00           .00
LIFE-INS           .00          .00           .00
LC/FEES            .00          .00           .00
MISC-PD            .00          .00           .00
ADV-BAL            .00          .00           .00
SUSP               .00          .00           .00
SC/PAYEE     F.H.A.

PAGE 00009 OF 00009  TRANS AVAILABLE      43  OLDEST TRAN 02-06-18 /P
```